**In re Mary H. DeROSE, Debtor.**

**Mary H. DeROSE, Plaintiff,**

v.

**EFG Technologies and Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 99–13919 K.**
**Adversary No. 03–1136 K.**

United States Bankruptcy Court, W.D. New York.

Oct. 28, 2004.

Thomas P. Feron, Jeffrey Freedman Attorneys, Buffalo, NY, for Plaintiff.

Stephen M. O'Neill, Damon & Morey LLP, Buffalo, NY, for Educational Credit Management Corporation.

**MEMORANDUM OF DECISION**

MICHAEL J. KAPLAN, Bankruptcy Judge.

After a trial on September 28, 2004, the Court placed its Rule 52 Findings on the record and ruled that the Debtor's obligations on two student loans totaling over $160,000 will not be discharged because the Debtor does not satisfy Prongs 1 and 2 of the *Brunner* test.[1] The Court later advised counsel that it would memorialize that ruling and the Court's reasoning in this Memorandum of Decision.

This case is highly unusual in one regard that the Court expects will soon become common. Nearly all of this debt *never entered payment status before the Debtor filed her Chapter 13 case*,[2] and the Debtor faithfully paid $90 every other week toward the loans over the course of a 53 month Chapter 13 Plan before commencing this 11 U.S.C. § 523(a)(8) proceeding.[3]

Consequently, (1) no-one knows or even could reasonably reconstruct what the "regular" monthly payments on this Debt would have been on July 9, 1999 (the date of filing of the Chapter 13 case), and (2) the monthly amount necessary to "satisfy" this debt is now totally at the Debtor's "option," so long as she pays at least $ 302.70 per month. (She has successfully paid a total of $ 185 per month over a

---

**1.** In *Brunner v. N.Y.S. Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir.1987), the Second Circuit, noting the lack of appellate teaching on the issue, upheld the District Court's three prong test of undue hardship, requiring a showing by the Debtor as follows:

1) that the Debtor maintain, based on current income and expenses, a *"minimal" standard of living* for herself and her dependents if forced to repay the loans;

2) that additional circumstances exist indicating that this state of affairs is likely to *persist for a significant portion* of the repayment period of the student loans; and

3) that the debtor has made *good faith* efforts to repay the loans (emphasis added).

**2.** All but about $9000 of the loans were in deferment or forbearance from the time the loans were disbursed until the July 9, 1999 Chapter 13 filing. That amount was owed from earlier loans that enabled the Debtor to become a Registered Nurse. Later she decided to move to Arizona (she had a grown son there who is a Chiropractor) and study Chiropractic.

**3.** The Court expresses no opinion as to whether the Chapter 13 performance satisfied the third prong of *Brunner, vel non*—i.e. "good faith effort to repay."

period of 53 months in Chapter 13, has discharged her other debts and is doing better at work.) The word "option" is critical, because this case is uniquely about the William D. Ford Loan Program.

The Ford Loan Program provides great relief to those who perhaps made a bad career choice.[4] But it provides a disincentive to self-improvement by those same people, *unless* they can obtain added relief from a bankruptcy filing.

This Court rules that such additional relief is not available in this case.

## DISCUSSION

■ As the Court understands it, this is the way the Ford Program works:

The Ford Program allows the Department of Education to grant a payment deferment, payment forbearance or a structured repayment program when warranted by circumstances. *See* 34 C.F.R. §§ 685.204, 685.205 & 685.209 (2004).

If the Debtor were to choose a 10 year repayment plan, her payments would be $1790.11 per month and she would pay a total of $214,813.20 if she completes the plan. She probably could not afford that.[5] She could choose a 30 year plan and pay between $895.05 per month and $928.95 per month, and her total of payments would be between $334,422 and $339,117.35 if she completes that plan. She probably cannot afford these. But, the Department may offer the Debtor an Income Contingent Repayment Plan *if she requests it.* The resulting payment is the *lesser* of (i) the payment due under the 12 year standard amortization *reduced* by a *factor,* published annually by the Secretary of Education, adjusting the borrower's gross in-

come or (ii) 20 percent of the debtor's discretionary income, calculated as the remainder of adjusted gross income less the HHS Poverty Guideline. Although the calculation can result in a $0 payment, the minimum payment is $5.00 per month. The maximum repayment period under the income contingent repayment plan is 25 years, *after which any remaining balance is cancelled. See* 34 C.F.R. § 685.209(c)(4)(i) & (iv); *see e.g. Norasteh v. Boston Univ. (In re Norasteh),* 311 B.R. 671 (Bankr.S.D.N.Y.2004) (Bernstein, C.J.).

So this Debtor may choose the "Income Contingent" option here and pay only $303 per month and after 300 months the balance of the debt will be forgiven. (Or waived, or written-off, or whatever; the Court will not address what the IRS might make of the tax consequence of the loan "cancellation".)

Given the 53–month history of $185 per month Chapter 13 payments and the fact that the Debtor is now earning more, there is no way that any Court could conclude that for this Debtor to pay $302.70 per month would constitute "undue" hardship. Nor would any court permit the Debtor to choose a higher option payment and then say "I can't afford it." The only difficult issue is the income contingency. *It arguably provides a disincentive to self-improvement.* Success in striving for more income will require a higher payment.

But a Bankruptcy Court Judge is not a "social engineer." The policymakers should decide whether this structure is a problem or not. Until then, this writer expects that just like many student loan debts are incurred so that one may "learn for learning's sake," one who is employed

---

4. Also to people who will take a while to get established.

5. She earns less than $30,000 per year employed full-time as both a Registered Nurse and a Chiropractor, in or near Sedona, Arizona.

in his or her chosen field will strive to advance in it for other good reasons, even if it means having to pay more of her student loan debts, so that others may enjoy the same opportunity.

This result runs throughout the *Brunner* Decision. Who will lend to someone pursuing a non-lucrative, but honorable curriculum, if their choice assists them to avoid the debt in a bankruptcy court? The Circuit Court in *Brunner* adopted the District Court's analysis, and in the District Court's analysis in *Brunner*, Judge Haight noted that Congress itself had devised the "[e]nlightened social policy" of lending to students "[w]ithout regard for creditworthiness." Instead, Congress purposefully granted a benefit to a student for which, in return, both the educational loan and bankruptcy statutes require the student debtor to bear the risks and burdens of the "[s]tudent loan ... investment." Therefore, it was "improper" for bankruptcy courts to consider the "value" of the debtor's educational choice in the discharge equation. *Brunner v. N.Y.S. Higher Educ. Serv. Corp. (In re Brunner),* 46 B.R. 752, 756 & n. 3 (S.D.N.Y.1985).

■ This Court is compelled by the Circuit Court ruling in *Brunner*, to rule that the fact that chiropractors like this Debtor might not make enough money fully to *repay* the debt incurred to earn the D.C. degree, is not a proper consideration if the debt will be "satisfied" by payment that is less-than-full, but at a payment rate that is affordable without hardship that is "undue."

■ Both the Debtor and the Creditor invite the Court to consider the Debt-

or's age—59—in deciding this case. The Debtor argues that her age is relevant because she cannot *repay* the debt *in her lifetime.* The Creditor argues that her age when she made her decision to enter Chiropractic School—45—is relevant because, rather than advancing her career as a Registered Nurse, she made a "lifestyle" choice to incur much more debt, and she should not be permitted now to benefit from that free choice.[6] After due consideration, this writer is certain that the age of the student/debtor *when the debts were incurred* must have no *relevance whatsoever* to the Prong 2 inquiry—the prong that addresses the Debtor's future prospects. This Debtor was able to get student loans to start to become a chiropractor at 45, and completed the requirements at age 50. Were I a policymaker, I would not hear her to complain that she is too old now to repay the debt at a chiropractor's pay. Her *current* age *is* relevant, but in light of the Ford Program, I find no hardship that is "undue" in requiring the Debtor to "remain liable" on the debt.

The debt is not likely to be fully repaid. But, what the creditor might eventually *recover* on the debt under non-bankruptcy law is not of consequence to this Court. The Ford Program initiated a "forgiveness" component to the "satisfaction" of a student loan debt, and that "forgiveness component" stands as an alternative to "repayment" in full. This changed the 11 U.S.C. § 523(a)(8) landscape dramatically.

This will likely become more common soon. (It also is likely to raise issues similar to HEAL issues.[7])

---

6. See *Melton v. N.Y.S.H.E.S.C. (In re Melton),* 187 B.R. 98 (Bankr.W.D.N.Y.1995) (Case No. 94–12151 K, AP No. 94–1093 K), wherein this writer stated that a life-style choice to stay poor will not avail the debtor who seeks to discharge student loan debt, even if the choice

has noble motive (such as to become a missionary).

7. See, for example *U.S. v. Kephart,* 170 B.R. 787 (W.D.N.Y.1994) (Larimer, J.).

Judgment will enter for the Defendant, without prejudice (however) to reopening this case if the Debtor applies for the Income Contingent Option and such application is denied.

SO ORDERED.